Citizens' Street Railroad Co. *v.* Shepherd.

CITIZENS' STREET RAILROAD CO. *v.* SHEPHERD.

*(Jackson.    June 24, 1901.)*

1. STREET RAILROADS.    *Duty of motorman as to preventing collisions.*

It is not the duty of a motorman in charge of and operating an electric street car to stop or even check the speed of his car upon observing a wagon or other moving object on the track ahead of him, unless, by reason of the nearness of the object, or other circumstances, it would appear to a reasonably prudent man that a collision would probably occur unless he did so. The motorman has the right to act upon the assumption that the wagon or other moving object will clear the track in due time until the contrary becomes reasonably manifest, and then it is his duty to prevent the accident, if possible, by the use of all reasonable means in his power.    (*Post, pp. 445–449.*)

2. CHARGE OF COURT.    *Contradictory clasues.*

An erroneous proposition in the Court's charge is not cured by another contradictory or inconsistent one that is correct. The parties are entitled to a clear and consistent charge as well as a correct one.    (*Post, pp. 449, 450.*)

---

FROM    SHELBY.

---

Appeal in error from Circuit Court of Shelby County.

WRIGHT, PETERS & WRIGHT for Citizens' Street Railroad Co.

JOHN E. BELL for Shepherd.

SNODGRASS, Ch. J. The defendant sued plaintiff in error for damages sustained through a collision between a street car and a market wagon, driven by Shepherd along by or on the track of the railroad company, and in which he sustained personal injuries. He recovered $3,500, and defendant company appealed and assigned many errors. The theory of the plaintiff was that he was driving upon the track and was negligently run down and injured; that of defendant was that he was driving by the side of the track and turned too close in, so that, after an effort to warn him and before defendant could stop its car, it ran against one of the fore wheels, stopping just as it touched it, and throwing plaintiff out; or, in any event, if on the track when first seen, the approach to him was slow and with abundant warning to attract his attention; and defendant's servants believed he would avoid the collision, and did themselves what they reasonably could to avoid it, and only failed by the least progress beyond the point where he was leaving, so as to strike only one of his wheels, and that it was a mere accident and not due to negligence on the part of its servants, but to that of plaintiff, and, in any event, he proximately contributed to the injury, and, therefore, could not recover, or if he did not thus contribute, his remote negligence was sufficient to so abate his recovery as to make the amount allowed excessive.

There was evidence tending to support the theories of both parties, and the usual conflict of evi-

dence as to the actual facts; and it is in relation to the charge in this connection that we propose to devote any discussion or predicate any action, for although there are some assignments and much argument going to the admission of evidence, we think there is nothing vital in the objections thus made, whether or not they be well taken. We pass in the same way the assignments and arguments regarding the charge on evidence. It does not all bear the close and elaborate analysis of defendant's counsel. Neither do we think the jury understood it as he does, but it practically meant about what the law is according to the way a not too critical or hypercritical jury would have, and doubtless did, understand it.

Many of the remaining twenty assignments can be properly disposed of in the same way, but among the assignments are some vitally objectionable. Among them are assignments sixth, seventh, sixteenth, seventeenth, and eighteenth.

Assignment sixth is as follows: "The Court erred in charging the jury as follows: 'This superior or preferential right, which the law gives to the street car company, requires of persons who desire to use the track, while driving along it, to look back at reasonable intervals to ascertain whether a car is coming, so that they may leave the track and not unnecessarily impede the progress of the car. But the failure on the part of the driver to look back for a car coming up in the rear does not, of itself,

make the act one of negligence, provided it is daylight and there is no obstruction in the way of the motorman seeing the driver and vehicle.'"

Assignment seventh is as follows: "The Court erred in charging as follows: 'So that, if you further find from the evidence that there was no obstruction in the way to prevent the motorman from seeing Shepherd, as he drove out of Boyd Avenue and drove along Vance street, and Shepherd drove upon the track at a distance far enough ahead of the car, which was being operated by Amos, the motorman, to have enabled any ordinarily careful person to have stopped his car, if need be, to avoid a collision, where the motorman had been on the lookout and had his car under control, then the Court charges you that it was negligence on the part of Amos, the motorman, to have collided with Shepherd, the wagoner, and whatever injuries Shepherd received, in consequence of such injuries, he has the right to recover for.' This should have been qualified by the quotation from Mr. Booth 'that a motorman has a right to assume that a person who is upon the track, and apparently capable of taking care of himself, will leave it before the car reaches him, and that he can indulge in this presumption until the danger of a collision becomes imminent.'"

Assignment sixteenth is as follows: "The Court erred in refusing the sixth special instruction requested by the defendant, which is as follows: 'If

the jury believes from the evidence that Henry Shepherd came out of Boyd avenue on to Vance street, when the motorman was some distance west of the intersection of Boyd avenue and Vance street, and that Henry Shepherd turned east upon the track; and at that time there was no danger of collision to Henry Shepherd by being run into by the car; and if they further believe that Henry Shepherd proceeded east upon Vance street in the tracks of the street car company, and in the tracks upon which the car that was coming east was running, then the motormon had the right to assume that Henry Shepherd would leave the track before the car reached him, and the motorman had the right to rely upon this presumption until the danger of a collision became imminent, then it became the duty of the motorman to use ordinary care to stop his car and prevent an accident; and if the jury believe that the motorman did use ordinary care after he saw, or by the exercise of ordinary care should have seen that the danger of a collision was imminent, then there could be no recovery in this case.' "

And to the same effect assignment seventeenth, which is as follows: " The Court erred in refusing the seventh special instruction requested by the defendant, which is as follows: ' If the jury believe from the evidence that Henry Shepherd entered Vance street at Boyd avenue, some distance in front of the car, the motorman was under no obligation at

that time to stop his car in order to prevent an accident—that is, if the danger of a collision at that time was not probable, but the motorman had the right to run his car following Henry Shepherd, and had the right to assume that Henry Shepherd would get out of the way until he saw, or by the exercise of ordinary care could have seen, that the danger of a collision did become imminent, but no longer.' "

The eighteenth assignment of error is as follows: "' The Court erred in refusing to give the eighth special instruction requested by the defendant, which is as follows: 'You are to say from the evidence when it became the duty of the motorman to attempt to stop his car and prevent the collision, and if you believe, from the evidence, that an ordinarily prudent man would not have attempted to stop his car, to avoid the collision, until Amos did attempt to stop his car and avoid the collision, then there can be no recovery, no matter whether Henry Shepherd was guilty or not.' "

The argument of plaintiff, that these requests were not a law, had been given, or were in other equivalent statements of the Court so far as they were law, and, therefore, already in the charge, is not well made. Some of the objections are met by suggestions of similar purport in the charge, followed by contradictory propositions. These do not cure errors. They only intensify them or make accurate understanding of the charge impossible. We

23 P—29

have repeatedly held that inconsistent and contradictory statements do not neutralize or validate each other, but are vitally erroneous. Several of these are pointed out in argument. It is not necessary to elaborate them here. The parties are entitled to a clear and consistent charge, as well as a correct one, that justice may be reached. This is a large verdict. On one theory it may be, notwithstanding this, not so large or extravagant as to indicate caprice or passion, or other reversible error here, but it, at least to be sustainable, must appear to be based on a clear and sound exposition of the law applied to the facts. As it is not so, we are constrained to reverse it and award a new trial.