Scott Allan ABBOTT by Next Friend Judith K. ABBOTT, and Judith K. Abbott, Individually, Plaintiffs-Appellants,

v.

AMERICAN HONDA MOTOR COMPANY, INC., King of Sports, Inc. d/b/a Valley Honda, and Honda Motor Company, Ltd., Defendants-Appellees.

Court of Appeals of Tennessee, Eastern Section.

Aug. 2, 1984.

Permission to Appeal Denied by Supreme Court Oct. 29, 1984.

Jerrold L. Becker, with Lockridge & Becker, Knoxville, for plaintiffs-appellants.

Charles B. Lewis, with Morton, Lewis, King & Krieg, Knoxville, for defendants-appellees.

## OPINION

SANDERS, Judge.

In this suit for personal injuries the Plaintiffs have appealed from a jury verdict in favor of the Defendants.

On June 12, 1981, Plaintiff-Appellant Scott Allan Abbott, aged 11, was riding a Honda ATC–70, three-wheeled, all-terrain motorcycle on his father's property near his home. As the Plaintiff was going up a hill, the vehicle lost its speed and power and Scott Abbott thereupon applied the brakes. Subsequently he released the brakes and began to ease the motorcycle backwards down the hill. The motorcycle then began to pick up speed, causing the Plaintiff to reapply the brakes. As a result of this action the front wheel came off of the ground, resulting in the Plaintiff's falling or being thrown over the back of the vehicle and onto the ground. The vehicle, in continuing its backwards and downhill movement, then passed over Abbott and seriously burned him when the unshielded underside of the exhaust pipe came into contact with him. The resulting burns are alleged to have caused permanent scarring and injuries, both physical and emotional.

Scott Abbott, by next friend Judith K. Abbott (his mother), sued Honda Motor Company, Ltd. (manufacturer), American Honda Motor Company, Inc. (distributor), and King of Sports, Inc. (seller) for damages arising from the injuries sustained in connection with the accident with the Honda ATC–70. Judith Abbott joined in the suit as a plaintiff, seeking to recover damages for various expenses, including her son's hospitalization and medical costs, and for the loss of her son's services, society, and companionship.

In their complaint, the Plaintiffs asserted that the Defendants were liable upon a variety of grounds, including strict liability, negligence and breach of implied warranties of merchantability and of fitness for a particular purpose. For their answer the Defendants completely denied any liability.

At trial the Plaintiffs proceeded solely upon the theory of strict liability. The jury returned a general verdict in favor of all of the Defendants and the trial court entered judgment in accordance with the verdict. Following the dismissal of their motion for a new trial, the Plaintiffs have appealed, assigning as error various instructions made by the court to the jury.

As their first assignment of error, the Appellants assert that the trial judge, at best, issued confusing instructions relative to the doctrine of contributory negligence and, at worst, issued incorrect instructions relative to the doctrine.

Toward the beginning of his charge to the jury the judge stated as follows: "Members of the jury, I charge you in this case that this is not a negligence case, but is based on Section 402A, Restatement of Torts, and I charge you that contributory negligence of this plaintiff, or plaintiffs, is not a defense to an action based upon strict liability for a defective product." Later in his charge the judge stated that "[t]he manufacturer of a product which involves a risk of injury to the user is liable to any person, whether a purchaser or third person, who without fault on his part sustains an injury caused by a defect in the design, the composition, or manufacture of the article, if the injury might reasonably have been anticipated or foreseen." The Appellants contend that, despite the original instruction that contributory negligence is not a defense in a strict liability action, the court's subsequent "references to 'fault'

were so highly prejudicial and contrary to settled law that no cure could have undone the harm."

■ Long ago, our Supreme Court established the rule that inconsistent or contradictory instructions can be the basis for reversal on appeal. In *Citizens' Street Railroad Co. v. Shepherd,* 107 Tenn. 444, 64 S.W. 710 (1901), the Court stated that it had "repeatedly held that inconsistent and contradictory statements do not neutralize or validate each other, but are vitally erroneous.... The parties are entitled to a clear and consistent charge, as well as a correct one, that justice may be reached." *Id.* at 449–50, 64 S.W. 710. *See also Employers Liability Assurance Corp. v. Farquharson,* 182 Tenn. 642, 188 S.W.2d 965 (1945).

It has been generally stated, in 75 Am. Jur.2d *Trial* § 628, 920 (1974), that:

"Instructions as a whole must be consistent and harmonious, not conflicting and contradictory.... Where instructions given to the jury for their guidance present contradictory and conflicting rules which are unexplained, and where following one would or might lead to a different result than would obtain by following the other, the instructions are inherently defective. This is true although one of the instructions correctly states the law as applicable to the facts of the case, since the correct instruction cannot cure the error in the contradictory erroneous instruction.... The fact that the court gave a correct charge at first will not avail to defeat an exception to a subsequent erroneous instruction."

*See also* 88 C.J.S. Trial § 338–39 (1955).

■ Under Tennessee law, the jury charge will be "viewed in its entirety" or "considered as a whole" in order to determine whether the trial judge committed prejudicial error. *See Farguharson, supra; Cooper Paintings & Coatings, Inc. v. SCM Corp.,* 62 Tenn.App. 13, 457 S.W.2d 864 (1970); and *Hayes v. Schweikart's Upholstering Co.,* 55 Tenn.App. 442, 402 S.W.2d 472 (1965).

■ Considering the charge in question as a whole, we do not find that the trial judge committed prejudicial error relative to his instructions on contributory negligence. As heretofore mentioned, the trial judge originally stated unequivocally that contributory negligence will not serve as a defense in a strict liability action. His subsequent references to "fault," although perhaps a bit unqualified, do not serve to contradict or to confuse his original charge. "Fault," as used within the context of the trial court's charge, clearly connotes a form of improper conduct or omission. And although contributory negligence cannot be applied as a defense to strict liability, certain forms of improper conduct or omission by a plaintiff may serve to shield the defendant(s) from liability. In *Ellithorpe v. Ford Motor Co.,* 503 S.W.2d 516 (Tenn.1973), our Supreme Court stated:

"The courts do recognize, however, that plaintiffs can conduct themselves in such a way as to defeat recovery. Regardless of which label is used, 'contributory negligence' or 'assumption of risk,' the courts have generally held that ordinary lack of care is not a defense, while 'voluntarily and unreasonably proceeding to encounter a known danger' is a defense. *Williams v. Brown Manufacturing Co.,* supra [45 Ill.2d 418], 261 N.E.2d [305] at 309 [ (1970) ]; Prosser, The Law of Torts, Sec. 102 at 670; Restatement (Second) of Torts, Sec. 402A, comment n at 356. As the court said in *Carney v. Ford Motor Co.:*

" 'We ... conclude that when a plaintiff, with knowledge of the defect, uses the product in such a manner as to voluntarily and unreasonably encounter a known danger, the act may be plead as a defense to an action based on strict liability in tort. We do not deem it determinative of the availability of this defense whether it be called negligence, contributory negligence or assumption of risk. It is more a matter of the unreasonableness of permitting a plaintiff to deliberately put in motion a known danger and attempt to profit thereby.' *Id.* at 9727.

"Likewise, the Restatement (Second) of Torts, Sec. 496A, comment d at 563, states that the *only* form of contributory negligence which can be used as a defense in strict products liability cases is that known as 'assumption of risk' as defined in *Carney v. Ford Motor Co.,* supra."

■ We agree. Taking the court's charge as a whole, we do not believe the references to "fault" confused or contradicted the original and unequivocal instruction that contributory negligence is not a defense in a strict liability action.

The Appellants next contend that the trial court erred in its jury charge by failing to distinguish between "warnings" and "instructions." Pertinent to this matter, the trial judge stated:

"Where a manufacturer or seller of a product has reason to anticipate a danger may result from a particular use, then the manufacturer or the seller is required to give adequate warning of the danger, and a product sold without such warnings is in a defective condition.

"An adequate warning is one calculated to bring home to a reasonably prudent user of the product the nature and extent of the danger involved in using the product.... Where the warning is adequate to inform the minor child of the dangers incident to the use of the product, the parents are put on notice to take steps to avoid injury to the child through proper training, instruction, and supervision.

"A product is unreasonably dangerous if it is dangerous to a greater degree than the ordinary consumer would expect, having ordinary knowledge of the nature of the product. However, when the manufacturer is aware of the danger and gives the consumer warning adequately informing him of that danger, the product is not rendered defective and unreasonably dangerous, and no liability will attach to the manufacturer.

"If you find, therefore, that the danger inherent in the motorcycle in this case is not greater than an ordinary consumer would expect, or if you find that the warnings and instructions supplied by the manufacturer adequately apprise such consumer of said danger, the manufacturer cannot be subject to such liability.

"The warning should be such that if followed it would make the product safe for users. Where such a warning or instruction is given, the supplier may reasonably assume that it will be read and heeded. Furthermore, when a warning or instruction is given specifying a particular manner of use or caution, and that warning or instruction is not complied with, no liability will attach to the supplier.

"Therefore, if you find that the supplier knew or reasonably should have known of a danger in the use of the motorcycle, that the supplier warned of that danger in such a way that if the instructions were followed the injury would not have been sustained, and that the warnings or instructions were not in fact followed, the supplier is relieved from liability for said injury."

■ The Appellants contend that the failure of the trial court to distinguish between "instructions" and "warnings" rendered its charge to the jury "confusing" and "misleading."

We disagree. First, the trial judge clearly focused his charge on "warnings," not "instructions." True, in a few instances, he spoke of the two concepts together. When reading the charge in its entirety, however, we do not find this charge to be either "confusing" or "misleading."

Additionally, it is not unusual for the two concepts to be spoken of together. In *Young v. Reliance Electric Co.,* 584 S.W.2d 663 (Tenn.App.1979), this court continuously refers to "instructions or warning" and concludes a portion of its opinion by stating that a "manufacturer is entitled to expect reasonable instructions or warnings to be heeded." *Id.* at 669.

Although "instructions" and "warnings" may be intended to serve different purposes, as the Appellants assert, obviously the two concepts are related in the fact that they both serve to lessen the potential

for injury. It has been stated that "there should be adequate directions or instructions for the use of a product, as well as proper warning of foreseeable dangers in connection therewith." 63 Am.Jur.2d *Products Liability* § 339 (1984). In fact, as a practical matter, instructions, when followed, may prevent an improper use of a product—an improper use that might otherwise result in injury to the user.

With the above in mind, we believe the trial judge did not commit prejudicial error in his charge on "warning" and "instructions."

■ The Appellants also say the court's charge on the state of the art was inadequate.

In determining whether or not a product is in a defective condition or unreasonably dangerous, a court will often give consideration to the state of the art. Addressing this concept, T.C.A. § 29–28–105(b) provides:

"In making this determination the state of scientific and technological knowledge available to the manufacturer or seller at the time the product was placed on the market, rather than at the time of injury, is applicable. Consideration is given also to the customary designs, methods, standards and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar products."

In the present case, the trial judge charged the jury on the issue of the state of the art as follows:

"The defendants in this case have asserted that their liability is determined in the light of whether the product was reasonably suited for the purpose for which it was intended, in accordance with the general accepted standards of the industry, having due regard for the existent state of technology and the state of the art at the time the product was designed and manufactured.

"I charge you that industry standards are not conclusive as to ordinary care in design or manufacture, but rather are admissible evidence for your consideration. The manufacturer and seller of a product or products, such as that involved in this case, have the duty to design and manufacture such products so that the products would be safe for their intended uses or for their reasonable foreseeable uses.

"The manufacturer and seller have the further duties to design, test, and install whatever necessary safety devices and safety guards that were available to render such product safe for their intended uses or for their reasonable foreseeable uses.

"A manufacturer is entitled to rely upon the state of the art at the time the product is placed on the market rather than at the time of the injury. Scientific and technical knowledge available to the manufacturer, as well as customary design methods, standards and techniques of manufacturing, inspecting and testing by other manufacturers of similar products, are elements to consider in determining whether the product conformed to the state of the art at the time it was placed on the market.

"If you find, therefore, that the defendants' product conformed to the state of the art, that is that it was in conformance with the standard set by and customary design of similar products, and that the defendant used the same type of testing, inspecting, and manufacturing techniques as defendants' competitors used, then the product is not determined to be defective and unreasonably dangerous, and no liability will attach to the defendants."

Upon reading the state of the art charge in its entirety, we find absolutely no merit in the Appellants' contention that the charge was inadequate in any way. The language used by the trial judge closely followed that of the statute and was in conformity with our case law. *See Ellithorpe, supra,* at 519.

The Appellants also contend the jury charge on the issue of intervening negligence was in error. Pertinent to this matter, the judge charged:

"Ladies and gentlemen of the jury, in this case the defendants have interposed

the plea of intervening cause or action. They say in this case that the parent, that is to say young Scott's father, failed to advise him and warn him of the instructions in that book, and therefore that was an intervening act and cause of this accident.

"The law is that the chain of causation is not broken by the occurrence of an intervening act or event if that act or event might reasonably have been anticipated.... Although there is an intervening act occurring after the defendant's act, nevertheless the defendant's act will be regarded as the proximate cause where the intervening act is a normal response to the stimulant of a situation created by the defendant's conduct.

"If a later, new, and independent act or event which would not reasonably have been foreseen by the original negligent party, or original party holding liability under 402A, intervenes in the sequence of events and itself causes an injury to another, the original party is relieved of liability for the injury. In order to breach the chain of causation, the intervening act or event must not have been reasonably foreseeable by the original wrongdoer and must not have been a normal consequence of the situation created by him.

"If you find, therefore, that the parent of the minor plaintiff did not properly instruct and supervise the minor plaintiff in the use of the motorcycle, and that such failure itself caused the injury sustained, then the acts and omissions of the parent are an intervening cause sufficient to relieve the defendants of liability."

■ The Appellants first contend the trial court erred in giving the charge of intervening negligence since the charge "was not substantiated by the weight of the evidence."

We disagree. In this case, there was a question of whether or not the father of the injured minor plaintiff properly instructed the youngster as to the correct operation of the motorcycle, and was plead as an affirmative defense by the Defendants. As such, the issue of intervening negligence was properly submitted to the jury.

■ The Appellants further appear to argue that the trial court erred by failing to distinguish between a foreseeable intervening cause (which will not serve to bar the Defendants' potential liability) and an unforeseeable intervening cause (which will serve to bar the Defendants' liability). From a plain reading of the court's charge, however, we find that the trial court clearly distinguished between the two. Therefore, the trial court did not commit error in his intervening negligence charge.

■ As their final assignment of error, the Appellants claim that the trial judge erred in refusing to use five of their requested instructions.

We again disagree. Certain of the Appellants' proposed instructions were sufficiently covered by the court's actual charge. *See Lawing v. Johnson*, 49 Tenn. App. 403, 355 S.W.2d 465, 469 (1961). The rest were correctly refused by the trial court as being improper under the facts of this case.

The issues are found in favor of the Appellees. The judgment of the trial court is affirmed and the cost of this appeal is taxed to the Appellants.

GODDARD and FRANKS, JJ., concur.