## IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

| | |
|---|---|
| ROBERT E. ADCOX and<br>DONALD F. GRAEF, | ) |
| | ) |
| Plaintiffs/Appellants, | ) Robertson Circuit No. 7987 |
| | ) |
| VS. | ) Appeal No. 01A01-9703-CV-00123 |
| | ) |
| SCT PRODUCTS, | ) |
| | ) |
| Defendant/Appellee. | ) |

APPEAL FROM THE CIRCUIT COURT OF ROBERTSON COUNTY
AT SPRINGFIELD, TENNESSEE
THE HONORABLE JAMES E. WALTON, JUDGE

# FILED

**October 17, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

**CHARLES R. RAY**
Nashville, Tennessee
Attorney for AppellantS


**RICHARD R. PARKER**
**WILLIAM S. RUTCHOW**
Nashville, Tennessee
Attorneys for Appellee


**AFFIRMED**


**ALAN E. HIGHERS, J.**


**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

Plaintiffs Robert E. Adcox and Donald F. Graef (collectively, the Employees) appeal the trial court's order dismissing their actions for breach of employment contract, promissory estoppel, and fraudulent inducement against Defendant/Appellee SCT Products. For the reasons hereinafter stated, we affirm the trial court's dismissals.

According to their complaint, both Employees worked as grinders for SCT Products. In February 1996, the Employees were discharged by SCT on the stated ground of "irreconcilable differences." Graef's termination followed a meeting with plant manager Phillip Lomas in which they discussed Graef's opposition to recent work rule changes unilaterally initiated by Lomas. Adcox's termination also followed a meeting with Lomas, in which Adcox questioned Lomas's decision not to pay Adcox additional money for training an employee as Adcox had been promised by his supervisor.

The Employees subsequently filed this action against SCT Products in which they asserted claims for breach of employment contract, promissory estoppel, and fraudulent inducement. In asserting these claims, the Employees alleged that they had relied on representations made by SCT that the Employees had the right freely and candidly to discuss problems with members of management without any fear of retaliation. According to the Employees, these representations appeared in the SCT Products Employee Handbook and in the Code of Ethics and Business Conduct Guidelines of SCT's parent company, Saint-Gobain Corporation. The Employees contended that these documents created a contract which SCT breached when it discharged the Employees merely for having candid discussions with SCT's plant manager.

SCT responded to the complaint by filing a motion to dismiss for failure to state a claim upon which relief could be granted pursuant to rule 12.02(6) of the Tennessee Rules of Civil Procedure. Specifically, SCT contended that, as a matter of law, the provisions of the Employee Handbook and the Code of Ethics and Business Conduct Guidelines did not constitute an employment contract. The trial court granted SCT's motion to dismiss, and this appeal followed.

2

This court recently summarized the applicable law for determining when an employee handbook distributed by an employer constitutes part of an employment contract:

> We begin our analysis of this issue with the well-established rule "that a contract for employment for an indefinite term is a contract at will and can be terminated by either party at any time without cause." Bringle v. Methodist Hosp., 701 S.W.2d 622, 625 (Tenn. App. 1985); accord Graves v. Anchor Wire Corp., 692 S.W.2d 420, 422 (Tenn. App. 1985); Whittaker v. Care-More, Inc., 621 S.W.2d 395, 396 (Tenn. App. 1981). Because Tennessee continues to adhere to the foregoing "employee-at-will" rule, a presumption arises in this state that an employee is an employee at will. Davis v. Connecticut Gen. Life Ins. Co., 743 F. Supp. 1273, 1280 (M.D. Tenn. 1990). . . .
>
> Even in the absence of a definite durational term, an employment contract still may exist with regard to other terms of employment. Williams v. Maremont Corp., 776 S.W.2d 78, 80 (Tenn. App. 1988); accord Hooks v. Gibson, 842 S.W.2d 625, 628 (Tenn. App. 1992). In this regard, this court has recognized that an employee handbook can become a part of an employment contract. Smith v. Morris, 778 S.W.2d 857, 858 (Tenn. App. 1988) (citing Hamby v. Genesco, Inc., 627 S.W.2d 373 (Tenn. App. 1981)); accord Davis v. Connecticut Gen. Life Ins. Co., 743 F. Supp. 1273, 1278 (M.D. Tenn. 1990). In order to constitute a contract, however, the handbook must contain specific language showing the employer's intent to be bound by the handbook's provisions. Smith v. Morris, 778 S.W.2d at 858. Unless an employee handbook contains such guarantees or binding commitments, the handbook will not constitute an employment contract. Whittaker v. Care-More, Inc., 621 S.W.2d 395, 397 (Tenn. App. 1981). As stated by one court, in order for an employee handbook to be considered part of an employment contract, "the language used must be phrased in binding terms, interpreted in the context of the entire handbook, and read in conjunction with any other relevant material, such as an employment application." Claiborne v. Frito-Lay, Inc., 718 F. Supp. 1319, 1321 (E.D. Tenn. 1989).

Rose v. Tipton County Pub. Works Dep't, No. 02A01-9608-CV-00189, 1997 WL 188803, at **1-2 (Tenn. App. Apr. 18, 1997) (perm. app. pending) (footnote omitted).

In accordance with the foregoing principles, we examine the provisions of the SCT Products Employee Handbook, as well as the other document upon which the Employees based their claims of breach of contract. In maintaining their claims, the Employees relied upon the following provisions contained in the Code of Ethics and Business Conduct Guidelines:

3

Saint-Gobain Corporation is committed to maintaining the highest business ethics and standards. In order to preserve the integrity of Saint-Gobain Corporation's business and the manner in which we are perceived by co-workers, customers, suppliers, competitors, and the communities in which we live and work, it is imperative that each employee conduct his or her business and personal affairs in compliance with Saint-Gobain Corporation's Code of Ethics and Business Conduct Guidelines.

. . . .

All managers are responsible for seeing that Company policies are followed. Every manager is responsible for communicating Company policies to his or her employees, including those dealing with legal and ethical behavior. Managers and supervisors also are responsible for maintaining a work environment where constructive, frank, and open discussion is encouraged and expected, without fear of retaliation.

The Employees also relied upon the following policies set forth in the SCT Products Employee Handbook:

TO assure each employee the right to discuss freely with management any problem concerning either their own welfare or the company's welfare.

. . . .

TO develop competent supervisory personnel who understand and meet the objectives of the company and who accept with open-mindedness the ideas, suggestions, and constructive criticism of fellow employees.

. . . .

TO do all these things in a spirit of friendliness and cooperation so that our company will continue to be known as "a good place to work."

In addition, the Employee Handbook contained a provision stating that the handbook was not an employment contract and that the company reserved the unilateral right to revise its policies and procedures:

Please understand that this handbook cannot anticipate every situation or answer every question about employment. It is not an employment contract. The company reserves the right to change or revise policies and procedures whenever such action is warranted.

4

After carefully reviewing the foregoing provisions, we affirm the trial court's order dismissing the Employees' actions against SCT. This court has repeatedly held that, where an employee handbook specifically provides that it is not a contract and reserves to the employer the unilateral right to amend the handbook's provisions, such handbook does not, as a matter of law, constitute part of the employment contract between the employer and the employee. In <u>Guekel v. Cumberland-Swan, Inc.</u>, No. 01A01-9410-CV-00482, 1995 WL 386558 (Tenn. App. June 30, 1995), for example, the employee handbook contained the following provision:

> This Handbook is intended as a guide for policies, benefits, and general information. These guidelines should not be interpreted as a contract of any kind. The company reserves the right to make changes in the guidelines [or] their application as it deems appropriate, and these changes may be made with or without notice. . . .

<u>Guekel</u>, 1995 WL 386558, at *3. In <u>Gaines v. Response Graphics, Inc.</u>, No. 01A01-9204-CV-00181, 1992 WL 319441, at *2 (Tenn. App. Nov. 6, 1992), the handbook similarly provided that it was not a contract, that it should not be relied on as such, and that the provisions therein could be revised without notice. In <u>Crigger v. Columbia Power & Water Sys.</u>, No. 01A01-9001-CV-00036, 1990 WL 121570 (Tenn. App. Aug. 24, 1990), <u>perm. app. denied</u> (Tenn. Jan. 28, 1991), the employee handbook contained these provisions:

> The statements contained in this manual regarding Columbia Power and Water Systems' policies, its employee benefits, and services are in summary form and do not represent a contract between Systems and its employees.
>
> The policies, employee benefits and services outlined in this manual are intended to be a convenient and helpful source of information and may be changed by Systems as it deems necessary.

<u>Crigger</u>, 1990 WL 121570, at *1. Finally, in <u>Blalock v. Hecks Discount Stores</u>, 1986 WL 4591 (Tenn. App. Apr. 18, 1986), the employee signed the following statement when receiving the employer's handbook:

> . . . I further understand that this handbook is intended as a guide for personnel policies, benefits and general information and that these guidelines should not be construed as a contract.
>
> I understand the company reserves the right to make changes in the guidelines or their application as it deems appropriate.

5

Blalock, 1986 WL 4591, at *1. In all of these cases, this court concluded that the handbook's provisions were insufficient to overcome the presumption of at-will employment and, thus, that the employees could not maintain actions for breach of contract against their employers.

We can conceive of no clearer way for an employer to express its intent not to be bound by an employee handbook's provisions than the employer's specific statement that the handbook is not a contract or that the handbook should not be construed as a contract. Even without such a statement, however, the employer's reservation of a unilateral right to modify the provisions of its employee handbook generally would preclude the handbook from being considered part of the employment contract. Claiborne v. Frito-Lay, Inc., 718 F. Supp. 1319, 1321 (E.D. Tenn. 1989); see also Gregory v. Hunt, 24 F.3d 781, 786 (6th Cir. 1994); Davis v. Connecticut Gen. Life Ins. Co., 743 F. Supp. 1273, 1279 (M.D. Tenn. 1990); Smith v. Morris, 778 S.W.2d 857, 858 (Tenn. App. 1988) Bringle v. Methodist Hosp., 701 S.W.2d 622, 624 (Tenn. App. 1985). Inasmuch as the handbook at issue contained both such provisions, we conclude that the trial court properly dismissed the Employees' claims for breach of employment contract against SCT.[1]

The judgment of the trial court is hereby affirmed. Costs of this appeal are taxed to Appellants, for which execution may issue if necessary.

_____
HIGHERS, J.

_____

[1]In citing the Code of Ethics and Business Conduct Guidelines, the Employees relied primarily on the provision regarding "maintaining a work environment where constructive, frank, and open discussion is encouraged and expected, without fear of retaliation." By its terms, this provision applies only to SCT's managers and supervisors. Moreover, even if this provision and other provisions of the Code are not viewed in the context of the Employee Handbook, the provisions fail to contain binding language which would overcome this state's presumption of at-will employment. See Gregory v. Hunt, 24 F.3d 781, 787 (6th Cir. 1994); Davis v. Connecticut Gen. Life Ins. Co., 743 F. Supp. 1273, 1280-81 (M.D. Tenn. 1990); Whittaker v. Care-More, Inc., 621 S.W.2d 395, 397 (Tenn. App. 1981); Rose v. Tipton County Pub. Works Dep't, No. 02A01-9608-CV-00189, 1997 WL 188803, at *3 (Tenn. App. Apr. 18, 1997).

We likewise conclude that the Employees' allegations of promissory estoppel and fraudulent inducement are insufficient to overcome the presumption of at-will employment. See Rampy v. ICI Acrylics, Inc., 898 S.W.2d 196, 211 (Tenn. App. 1994); Price v. Mercury Supply Co., 682 S.W.2d 924, 934 (Tenn. App. 1984).

CONCUR:

_____
FARMER, J.

_____
LILLARD, J.

7